## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

**UNITED STATES OF AMERICA**    **:**

                           **3:13-CR-230**

                             **:**

      **v.**

                           **:**     **(JUDGE MANNION)**

**RICHARD MURPHY,**          **:**

            **Defendant**     **:**

## <u>MEMORANDUM</u>

## I.    BACKGROUND

On June 22, 2020, defendant Richard Murphy filed, *pro se*, a Motion for Compassionate Release under 18 U.S.C. §3582(c)(1)(A), and request for immediate transfer to home confinement related to his 24-month sentence, due to the COVID-19 pandemic and his underlying medical conditions. (Doc. 113). In particular, Murphy, age 37, seeks the court to immediately release him from confinement in prison at USP-Canaan, located in Waymart, Pennsylvania, to home confinement with his fiancé in Sharpsburg, Maryland, due to his fear that he may contract the COVID-19 virus in prison and, his fear that if he does, based on his alleged chronic medical conditions of diabetes, chronic kidney disease, hypertension, asthma and a stent in his heart, he will be at greater risk to suffer more severe consequences. He also alleges that one staff member and one inmate have tested positive for

1

COVID-19 in the prison compound and that the prison does not have an adequate medical staff "to treat th[e] deadly virus."[1]

Murphy also appears to request the court to appoint him counsel to represent him with respect to his motion.

Murphy attached Exhibits to his motion, including a copy of a letter dated May 22, 2020, which he sent to Attorney General Barr requesting compassionate release and copies of his BOP medical records regarding his blood work.

Murphy avers that his 24-month prison sentence imposed by this court for violations of the terms of his supervised release expires in about 10 months, and that his release date is May 10, 2021.[2]

Additionally, Murphy states that he submitted a request for Compassionate Release to USP-Canaan Warden Bradley and that it was denied on April 14, 2020. As such, Murphy alleges that "[he has] exhausted [his] administrative appeals."

---

[1]The number of COVID-19 cases in a federal prison can be found at COVID-19 Cases, Federal BOP, https://www.bop.gov/coronavirus/. According to the government, "as of June 29, 2020, one inmate and four staff have tested positive for COVID-19 at USP Canaan." The BOP's website indicates that as of August 3, 2020, USP Canaan currently has no positive cases of COVID-19 among staff and inmates, and that four staff members have recovered from the virus.

[2]On July 29, 2020, the Third Circuit affirmed this court's October 1, 2019 judgment revoking Murphy's supervised release for violations of the terms of his release by committing burglary and assault after he served his 41-month prison sentence for a drug-related offense. (Doc. 119).

Based on the foregoing, Murphy contends that he has stated "compelling reasons" warranting his release from prison to home confinement and that his motion should be granted "in the interest of justice."

On June 22, 2020, the court directed the government to respond to Murphy's motion and to include in its response Murphy's medical conditions and the measures which the prison has taken to comply with the Center for Disease Control (CDC) guidelines regarding the COVID-19 pandemic. The court also directed the government to address whether the defendant exhausted his BOP administrative remedies with respect to the relief sought in his motion. (Doc. 114).

On June 29, 2020, the government filed its brief in opposition to Murphy's motion. (Doc. 115).

On July 13, 2020, Murphy filed his reply brief with Exhibits. (Docs. 117 & 117-1). Exhibit A is copy of his proposed home plan, employment plan, and medical coverage if he is released from prison. Exhibit B includes a copy of Warden Bradley's April 14, 2020 response denying Murphy's April 1, 2020 request for Compassionate Release/Reduction in Sentence pursuant to BOP Program Statement 5050.50 and 18 U.S.C. §3582. (Doc. 117-1 at 5). Exhibit B also contains a copy of Warden Bradley's May 4, 2020 response to Murphy's April 27, 2020 Request for Compassionate Release pursuant to BOP Program Statement 5050.50 and 18 U.S.C. §3582 based on COVID-19. In his May 4, 2020 response, the Warden stated that Murphy's request was evaluated under the applicable guidelines and that "[his] concern about

3

being potentially exposed to, or possibly contracting, COVID-19 does not currently warrant an early release from [his] sentence." Warden Bradley also advised Murphy that if he was "not satisfied with this response to [his] request, [he] may commence an appeal of this decision via the administrative remedy process by submitting [his] concerns on the appropriate form (BP-9) within 20 days of the receipt of this response." (Doc. 117 at 4).

Further, as Exhibit C, Murphy submitted copies of two of his BOP prescriptions related to his stated medical conditions for a heart issue and hypertension.

Also, on July 13, 2020, a letter to the court from Isaiah Martin, Residential Manager of The Ranch, a drug treatment facility in Frederick, Maryland, was filed in support of Murphy's request for release to home confinement. (Doc. 118).

On July 31, 2020, Murphy submitted a letter to the court stating that he has completed every course under the First Step Act offered by USP Canaan, and that he does not pose a threat to the community. (Doc. 120).[3] On this same date, Murphy submitted another letter to the court and attached Exhibits to it. (Doc. 121). With this letter, Murphy included copies of his BOP medical records stating that they show he has a history of heart disease, hypertension, and sickle-cell anemia. He states that the government violated

---

[3] As discussed by the Third Circuit, (Doc. 119-1 at 5-7), the facts presented at Murphy's revocation hearing reveal that he does indeed pose a threat to the community.

his due process rights by failing to disclose in its opposition brief that he has underlying medical conditions recognized by the CDC which put him as a greater risk to contract COVID-19 and to "possibly die" if he contracts it. Murphy also alleges that the government misrepresented his criminal history in its brief. Further, Murphy attached copies of certificates from courses he completed in prison.

Also attached to Murphy's second letter, (Doc. 121 at 3), is a copy of a June 18, 2020 response from R. Pikilski, CSW, to his June 18, 2020 Inmate Request to Staff Member regarding a recommendation by the BOP for a Residential Reentry Center ("RCC") placement. The response states that Murphy is not being recommended for RRC placement due to his repeated supervised release violations and "being a significant threat to the community."

After considering Murphy's motion, it will be dismissed without prejudice for lack of jurisdiction due to his failure to exhaust all of his BOP administrative remedies under §3582(c)(1)(A)(i). To the extent Murphy is also deemed as seeking the court to order the BOP to find him eligible for immediate home confinement designation under the Coronavirus Aid, Relief, and Economic Security Act (the "CARES Act"), Pub. L. 116-136, §12003, the court does not have authority to grant his request for relief and order the BOP to release him to home confinement.[4]

---

[4]Since Murphy is proceeding *pro se*, the court liberally construes his motion as also seeking relief pursuant to the CARES Act, in addition to a

## II.   DISCUSSION

The court will first consider the exhaustion issue since it is a threshold matter.

In its brief, (Doc. 115 at 3-4), the government states:

Murphy requested the prison for compassionate release, and that request was denied on April 14, 2020. USP Canaan staff informed the undersigned that Murphy suffers from diabetes, which is a risk factor for COVID-19, but the warden determined that the need to protect the community outweighed the risk in this case. Murphy did not appeal the warden's decision to the Bureau of Prisons (BOP). The Department of Justice's position is that Murphy's failure to appeal the warden's decision to the BOP does not constitute a failure to exhaust his administrative remedies.

However, as mentioned, Murphy's Exhibits show that he submitted a second request to the Warden. In particular, on May 4, 2020 Warden Bradley responded to Murphy's April 27, 2020 Request for Compassionate Release and denied it.[5] The Warden specifically advised Murphy of his administrative remedies with the BOP to appeal his decision. Rather than proceed with his administrative remedies to appeal the Warden's May 4, 2020 denial of his request for compassionate release and then complete the BOP

_____

motion compassionate release pursuant to 18 U.S.C. §3582(c)(1)(A), as he alleges that he is eligible for relief under the First Step Act and that the BOP is violating his constitutional rights by denying him relief.

[5]Despite the directive in the court's Scheduling Order, (Doc. 114), for the government to address the exhaustion issue, the government's brief inexplicitly failed to address Murphy's April 27, 2020 Request for Compassionate Release and Warden Bradley's May 4, 2020 response to it. (*See* Doc. 115 at 3-4). Nor did the government submit these documents as Exhibits, as it should have.

administrative remedy process, Murphy filed his instant motion on June 22, 2020 with this court requesting compassionate release under 18 U.S.C. §3582(c)(1)(A). Murphy essentially alleges that there exists extraordinary and compelling circumstances warranting his release from prison to home confinement.[6]

Murphy and the government assert that this court has jurisdiction since defendant filed his instant motion over 30 days after he submitted his requests to the Warden despite the fact that he did not appeal either of the Warden's responses through the BOP administrative remedy process, as he should have. Since the Warden timely responded to Murphy's April 14, 2020 and April 27, 2020 requests, and advised Murphy with respect to his second request that he could appeal *via* the BOP administrative remedy process, this court finds that Murphy has not exhausted his administrative remedies as required, and that the court cannot waive the exhaustion requirement.

---

[6] Since the government included in its response the safety measures implemented by the BOP in response to the COVID-19 virus, as well as the safety protocols enacted at USP-Canaan, (Doc. 115 at 4-13), and since this court is well-aware of all of the safety measures implemented by the BOP, *see* Cordaro, 2020 WL 2084960, and since many of the measures are found on the BOP's website, they are not repeated. *See also* BOP website: www.bop.gov/coronavirus/index.jsp. The court has also reviewed the May 26, 2020 Memorandum from Ken Hyle, BOP Assistant Director/General Counsel to the Honorable Ricardo S. Martinez, Chair of the Judicial Conference Criminal Law Committee, regarding updated information from the Bureau of Prisons with respect to its response to the COVID-19 pandemic and about revised screening procedures for new inmates being confined in federal prisons to reduce the spread of the virus.

*See* United States v. Greenlove, 2020 WL 3547069 (M.D. Pa. June 30, 2020); United States v. Fraction, 2020 WL 3432670 (M.D. Pa. June 23, 2020); United States v. Muskey, 2020 WL 3547084 (M.D. Pa. June 30, 2020).

The government goes on to argue that the court should deny Murphy's motion for compassionate release from prison to home confinement based on the merits. Murphy also assert that he has met the exhaustion requirement under 18 U.S.C. §3582(c)(1)(A) since he filed his motion more than 30 days after the Warden denied his requests. (*See* Doc. 117). In properly applying the law, the court finds that Murphy's motion should be dismissed for lack of jurisdiction because he has not exhausted his administrative remedies. This court has consistently followed the vast majority of courts and found that the exhaustion requirement is "mandatory" and that since Murphy filed his instant motion with the court before exhausting his administrative remedies with the BOP, this court is "without jurisdiction to entertain the motion." *See* Greenlove, *supra*; Fraction, *supra* (citing Untied States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020)). This court has also held that it is bound to follow the Third Circuit's Raia case. *See also* United States v. Blevins, 2020 WL 3260098, *2 (S.D. Miss. June 16, 2020) ("The statute [18 U.S.C. §3582(c)(1)(A)] does not provide an exception to this mandatory statutory exhaustion requirement, equitable or otherwise.") (citing United States v. Koons, 2020 WL 1940570, at *3 (W.D.La. Apr. 21, 2020) ("If an inmate's request is denied before the lapse of 30 days, then he

8

must fully exhaust administrative remedies before the Court may consider his motion to modify his sentence under the statute."); United States v. Martin, 2020 WL 3065302, at *3 (S.D.Miss. June. 9, 2020)) (district court criminal nos. omitted).

The Warden responded to both of Murphy's requests in a timely manner within the 30-day period, and then advised defendant that he could appeal the May 4, 2020 response through the BOP administrative remedy process. Instead of then appealing the Warden's May 4, 2020 response, Murphy filed his instant motion with this court.

Regarding exhaustion in this case, the court must first consider whether Murphy has exhausted his BOP administrative remedies despite the government's misplaced concession on this issue. *See* Blevins, 2020 WL 3260098, *2 (Court first considered the exhaustion issue even though "the Government seem[ed] to concede that there has been exhaustion", and the court then found that "the Defendant failed to exhaust his administrative remedies" and dismissed his motion.). *See also* United States v. Bolze, --- F.Supp.3d---, 2020 WL 2521273, *3 (E.D.Tn. May 13, 2020) (court held that "the exhaustion requirement is a prerequisite to the court's exercise of its authority under §3582(c)(1)(A)", and "the Court lacks jurisdiction to reduce a term of imprisonment under §3582(c)(1)(A) if defendant has not exhausted his administrative remedies ….").

Murphy did not appeal the May 4, 2020 response from the Warden *via* the BOP's administrative remedy process, and since the Warden timely

9

responded to Murphy's request, Murphy cannot directly file his motion with the court without exhausting his administrative remedies. *See* Blevins, 2020 WL 3260098, *3 ("If an inmate's request is denied before the lapse of 30 days, then he must fully exhaust administrative remedies before the Court may consider his motion to modify his sentence under the statute.") (citation omitted). "Therefore, a defendant does not satisfy the exhaustion requirement of §3582(c)(1)(A) if he does not appeal the warden's decision to deny compassionate release." *Id.* (citing United States v. Pinson, 2020 WL 2771343, at *3 (S.D.Tex. May 28, 2020) ("finding defendant's failure to appeal the warden's denial of compassionate release meant that he failed to exhaust his administrative rights"). If the Warden fails to respond to the inmate's request within 30 days, then he can file his motion for compassionate release with the court without fully exhausting his BOP administrative remedies.

As the court in United States v. Smith, 2020 WL 2063417, *2 (N.D.Oh. April 29, 2020), explained:

> Smith has also failed to fully exhaust his administrative remedies with respect to his original motion. Because the Warden explicitly denied his 2019 request for compassionate release, Smith needed to exhaust by appealing the Warden's decision. *See* 28 C.F.R. §542.15(a); *see also* B.O.P. Program Statement 5050.50 §571.63 (citing the Administrative Remedy Program appellate procedure as the proper method of administratively appealing a denied §3582(c)(1)(A)); *see, e.g.*, United States v. Brummett, 2020 WL 1492763, at *1-2 (E.D.Ky. Mar. 27, 2020)(denying request for compassionate release due to COVID-19 for failure to exhaust because inmate did not appeal warden's denial of his request for a reduction in sentence).

10

Recently, in United States v. Early, 2020 WL 2572276, *3 (W.D.Pa. May 21, 2020), the court considered a similar exhaustion issue as presented in the instant case, and stated: "Warden Williams responded to Defendant's request [for compassionate Release/Reduction in Sentence] within 30 days of receipt. Consequently, Defendant is obligated to complete the administrative appeal process. Therefore, this Court finds that Defendant has failed to exhaust his administrative remedies." The court in Early, *id.*, also stated that the court may not waive the exhaustion requirement and that "exhaustion of [defendant's] administrative remedies is mandatory." (citing United States v. Raia, 954 F.3d 594 (3d Cir. 2020)). "In Raia, the Court of Appeals emphasized the BOP's statutory role and extensive efforts to control the spread of Covid-19, and held that the 'exhaustion requirement takes on added – and critical – importance.'" *Id.* (quoting Raia, 954 F.3d at 597). "The BOP is in the best position to consider the myriad of factors necessary in rendering a decision." *Id.*

Murphy, like the defendant in the Early case, *id.* at *2, as well as the defendant in the Greenlove case, contends that the exhaustion requirement is satisfied because he filed his requests over 30 days before he filed his instant motion, despite the fact that the Warden responded to his requests within the 30-day time frame provided for in the First Step Act.

The court in Early, *id.* at *3, explained:

Defendant's reading of the statute is misplaced. Courts have interpreted the statue to mean that an inmate must fully exhaust his

11

administrative remedies unless his or her warden does not respond to the inmate's request within 30 days. *See* <u>United States v. Nance</u>, 2020 WL 114195, at *2 (W.D. Va. Jan. 10, 2020). In other words, a defendant must wait to file a motion with this Court until either his administrative request related to compassionate release is denied and he fully exhausts all administrative rights to appeal or thirty days have passed from the date he made the application *with no response from the warden*, whichever occurs first. *Id.* ("[C]ases indicate that this statutory exhaustion requirement has been interpreted to excuse full exhaustion of administrative remedies only if 30 days have elapsed without any response by the Bureau of Prisons to the inmate's request."), citing, <u>United States v. Bolino</u>, 2020 WL 32461, at *1 (E.D.N.Y. Jan. 2, 2020). *See also*, <u>United States v. Bevans-Silva</u>, 2020 WL 2475079 (S.D. Ga. May 13, 2020); <u>United States v. Samuels</u>, 2020 WL 2499545, at *2 (W.D. La. May 13, 2020); <u>United States v. McCallister</u>, 2020 WL 1940741, at *2 (W.D. La. April 21, 2020); <u>United States v. Rodriguez</u>, —— F.Supp.3d ——, ——, 2020 WL 1627331, at *3 (E.D. Pa. Apr. 1, 2020) ("Under the First Step Act ... it is possible for inmates to file compassionate-release motions—under the 30-day lapse provision—when their warden never responds to their request for relief."); <u>United States v. Mattingley</u>, 2020 WL 974874, at *3 (W.D. Va. Feb. 28, 2020); <u>United States v. Keith</u>, 2019 WL 6617403, at *1 (W.D. Okla. Dec. 5, 2019)(To exhaust administrative remedies, a defendant "first submits his request to BOP and either (1) complete the administrative appeal process, if BOP denies his request; or (2) wait 30 days from BOP's receipt of his request to deem its lack of response a denial of his request."). [District Court criminal nos. omitted].

In <u>United States v. Solomon</u>, 2020 WL 2768897, *3 (W.D.Pa. May 28, 2020), the court stated, "[c]ourts have interpreted [18 U.S.C. §3582(c)(1)(A)] to mean that an inmate must fully exhaust his administrative remedies unless his or her warden does not respond to the inmate's request within 30 days." (citing <u>Early</u>, 2020 WL 2572276, at *3). This court concurs with <u>Early</u>, <u>Solomon</u>, and <u>Blevins</u>, as well as the cases to which they cite, and finds that

Murphy must wait to file a motion with the court after he fully exhausts all administrative rights with respect to the Warden's responses to his administrative requests for compassionate release since the Warden responded to his requests within 30 days from the date he submitted them. *See id.* (citing Early, 2020 WL 2572276, at *3).  *See also* United States v. Martin, 2020 WL 3065302, *3 (S.D.Miss. June 9, 2020) (Court "agree[d] with those courts interpreting the 'lapse' provision [i.e., the language in 18 U.S.C. §3582(c)(1)(A) providing that the court can consider a motion for compassionate release after the "lapse of 30 days from the receipt of such a request by the warden"] as having a futility component: it applies only when the BOP has failed to respond to a compassionate-release request within 30 days of its submission. If an inmate's request is denied before the lapse of 30 days, then he must fully exhaust administrative remedies before the Court may consider his motion to modify his sentence under the statute.") (citing Early, 2020 WL 2572276, at *3; Blevins, 2020 WL 3260098, *3 ("Inasmuch as [defendant's] request was denied [by the warden] before the lapse of 30 days, he is required to fully exhaust his administrative remedies before the Court may hear his Motion. There is no evidence that [defendant] appealed the warden's decision with the BOP. By failing to appeal the warden's decision to the Regional Director, [defendant] has not fully exhausted his administrative rights and the suit must be dismissed."); United States v. Ng Lap Seng, ---F.Supp.3d---, 2020 WL 2301202, *5-6 (S.D.N.Y. May 8, 2020)).

13

In Ng Lap Seng, 2020 WL 2301202, *5-6, the Court held that section 3582(c)'s "exhaustion requirement is clearly statutory and therefore mandatory" and, did not agree with courts that have "interpreted 'lapse of 30 days from the receipt of such a request by the warden,' 18 U.S.C. §3582(c)(1)(A), to mean that the statute's exhaustion requirement is satisfied merely upon the passage of 30 days from the date the warden receives a defendant's request that the BOP file a compassionate release motion on its behalf, regardless of whether the BOP has failed to take action on the request." The court stated that this "first reading would also—in many cases—render the statute's provision regarding full exhaustion of administrative remedies meaningless, as defendants like Ng would forego appealing a warden's denial of their compassionate release request if the 30-day period was nearing an end." *Id.* The court in Ng Lap Seng then "agree[d] with the courts that have interpreted Section 3582(c)(1)(A)'s 'lapse' language as requiring the BOP's failure to respond to a prisoner's request for a compassionate release motion within thirty days, giving the court discretion to hear a compassionate release motion if the BOP has failed to timely consider the request." *Id.* at *6. The court also explained that "given the BOP's regulations regarding its deadlines for considering compassionate release requests, it is unlikely in the normal case that a defendant could exhaust his administrative remedies within 30 days", and that "[i]f Congress desired to so fundamentally change the compassionate release process by circumventing the BOP's full administrative review, Congress could have

14

used clearer language, as it did elsewhere in the First Step Act." *Id.* The court then concluded that "[b]ecause I read Section 3582(c)(1)(A)'s 'lapse of 30 days' language to require the BOP's failure to respond to a compassionate release request within thirty days of its submission to the BOP, I conclude that Ng must fully exhaust the BOP appeals process to satisfy Section 3582(c)(1)(A)'s exhaustion requirement", and that the defendant "has not yet satisfied this exhaustion requirement due to his failure to fully appeal the warden's denial of his request." *Id.* at *7. The court in Ng Lap Seng also indicated that if Section 3582(c)(1)(A)'s exhaustion requirement is not jurisdictional, then the government can waive the affirmative defense of exhaustion. Conversely, if Section 3582(c)(1)(A)'s exhaustion requirement is jurisdictional, as this court has found it is based on Raia, then the government cannot waive the exhaustion issue and the court must be satisfied that it has jurisdiction to consider the merits of a defendant's motion for compassionate release. As indicated, this court has found that exhaustion of administrative remedies is mandatory under 18 U.S.C. §3582(c)(1), *see* Blevins, 2020 WL 3260098, *2, Greenlove, *supra*, and since Murphy has not exhausted his remedies with respect to the Warden's May 4, 2020 response to his second request, this court does not have jurisdiction to grant his request for compassionate release. *See* United States v. Johnson, --- F.Supp.3d---, 2020 WL 1663360, *3 (D. Md. April 3, 2020) ("[T]he administrative exhaustion requirements of §3582(c)(1)(A) are jurisdictional

in nature—that is, a court has no power to hear a claim under this provision if the Defendant has not first exhausted his administrative remedies.").

This court has concurred with the court in <u>Ng Lap Seng</u> as well as the courts cited therein, *id.* at \*6 (string citations omitted), which have held that "the exception to exhaustion in section 3582(c)(1)(A) 'provides that Defendants can bypass exhaustion altogether if the warden fails to act on an administrative application for compassionate release within 30 days.'" However, if the warden responds to defendant's request within 30 days, then defendant must exhaust all of his BOP administrative rights to appeal the warden's decision as provided by BOP Program Statement No. 5050.50, and "the same exhaustion procedure for routine administrative grievances (i.e., the use of forms BP-9 through BP-11) applies to requests for compassionate release." *Id.* at \*7 (citing 28 C.F.R. §542.15(a)). The court notes that since the court in <u>Ng Lap Seng</u>, *id.* at \*7, detailed the required administrative remedies an inmate must pursue before filing a motion for compassionate release with the court, as well as citations to the applicable websites, they are not repeated herein. *See also* <u>Blevins</u>, 2020 WL 3260098, \*3; <u>United States v. Martin</u>, 2020 WL 3065302 (S.D.Miss. June 9, 2020) ("For the reasons articulated by the court in <u>Ng Lap Seng</u>, this Court agrees with those courts interpreting the 'lapse' provision as having a futility component: it applies only when the BOP has failed to respond to a compassionate-release request within 30 days of its submission. If an inmate's request is denied before the lapse of 30 days, then he must fully exhaust administrative

16

remedies before the Court may consider his motion to modify his sentence under the statute. In this case, Martin says his request was initially denied within the 30-day window, and he does not demonstrate that he fully exhausted that denial. In this procedural posture, the Court 'may not modify [his] term of imprisonment.'") (citing 18 U.S.C. §3582(c)(1)(A)).

In short, simply because defendant submitted his compassionate release requests more than 30 days before he filed his instant motion, does not establish that the 30-day requirement for exhaustion of administrative remedies has been met.

Also, to the extent that Murphy is deemed as attempting to argue futility based on his above stated allegations in his motion, and requests the court to consider the substantive merits of his motion, this court has concurred with the courts that have found that there is no futility exception in 18 U.S.C. §3582(c)(1)(A). *See* Greenlove, *supra*; Blevins, 2020 WL 3260098, *2 ("The statute does not provide an exception to this mandatory statutory exhaustion requirement, equitable or otherwise."). Further, Murphy's use of the administrative process by submitting requests with the Warden on April 1, 2020, and April 27, 2020, before he filed his instant motion, (Doc. 117-1 at 4-5), belies any claimed futility since the Warden timely responded to both of his requests and even advised defendant how to appeal his May 4, 2020 response through the BOP administrative remedy process.

Additionally, this court has now repeatedly held that it cannot waive Section 3582(c)(1)(A)'s exhaustion requirement because it is jurisdictional.

*See* United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020) (Third Circuit held that courts cannot consider a request for compassionate release under the First Step Act until the inmate has exhausted his BOP administrative remedies.); United States v. Davila, 2020 WL 2839860, \*2 (W.D.Pa. June 1, 2020) ("The exhaustion requirement that applies in this case is explicitly set forth in §3582(c)(1)(A), and, therefore, cannot be excused."); United States v. Pitt, 2020 WL 2098272, \*2 (M.D.Pa. May 1, 2020) ("The court cannot overlook [defendant's] failure to exhaust his remedies, as the Third Circuit recently emphasized the need for 'strict adherence' to the exhaustion requirement in the wake of the COVID-19 pandemic.") (citing Raia, 954 F.3d at 597).

Further, even though Murphy and, inexplicably, the government concur that since he submitted his requests for compassionate release to the Warden and 30 days passed before he filed his instant motion, the court finds that Section 3582(c)(1)(A)'s "lapse of 30 days" language has not been satisfied, permitting judicial consideration of his motion. This court rejects the interpretation of the language "lapse of 30 days from the receipt of such a request by the warden, 18 U.S.C. §3582(c)(1)(A), to mean that the statute's exhaustion requirement is satisfied merely upon the passage of 30 days from the date the warden receives a defendant's request that the BOP file a compassionate release motion on its behalf, regardless of whether the BOP has failed to take action on the request." Ng Lap Seng at \*5. As such, the court's "interpretation [] foreclose[s] judicial consideration of [Murphy's]

18

motion until [he] 'fully exhausted all administrative rights to appeal [the] failure of the Bureau of Prisons to bring a motion on [his] behalf ....'" Ng Lap Seng at *5.

Secondly, the court cannot yet determine if Murphy has demonstrated that "extraordinary and compelling reasons" due to the COVID-19 pandemic and his medical conditions warrant a reduction of his sentence, since he has not exhausted his administrative remedies. *See* United States v. Zukerman, ---F.Supp.3d---, 2020 WL 1659880, *2 (S.D.N.Y. April 3, 2020) ("in order to be entitled to relief under 18 U.S.C. §3582(c)(1)(A)(i), [defendant] must both meet the exhaustion requirement and demonstrate that 'extraordinary and compelling reasons' warrant a reduction of [her] sentence.") (emphasis added); Raia, 954 F.3d at 597 ("The First Step Act empowers criminal defendants to request compassionate release for 'extraordinary and compelling reasons'" after the defendant exhausts administrative remedies with the BOP.) (citing 18 U.S.C §3582(c)(1)(A)(i)). The Third Circuit in Raia, *id.*, also held that defendant's failure to comply with §3582(c)(1)(A)'s exhaustion requirement "presents a glaring roadblock foreclosing compassionate release at this point."

Finally, to the extent Murphy is deemed as also relying on the CARES Act, which was signed into law on March 27, 2020, as well as Barr's March 26, 2020 and April 3, 2020 Memoranda to the BOP, such reliance is misplaced.

This court has repeatedly held that, "the jurisdiction of [a home confinement] determination [under the CARES Act] is with the Director of the Bureau of Prisons." United States v. Cruz, ---F.Supp.3d---, 2020 WL 1904476, *4 (M.D.Pa. April 17, 2020); Cordaro, 2020 WL 2084960, *6-7 ("the determination of which inmates qualify for home confinement under the CARES Act is with the BOP Director." (citations omitted). *See also* United States v. Sawicz, 2020 WL 1815851, *1 (E.D.N.Y. April 10, 2020); United States v. Doshi, 2020 WL 1527186, *1 (E.D.Mi. March 31, 2020) (The CARES Act "temporarily permits the Attorney General to 'lengthen the maximum amount of time for which [it] is authorized to place a prisoner in home confinement' under §3624(c)(2)", and "the authority to make this determination is squarely allocated to the Attorney General, under whose authority is the Bureau of Prisons."); United States v. Coker, 2020 WL 1877800, *1 (E.D.Tenn. April 15, 2020) (court stated that while section 12003 of the [CARES Act] "presently and temporarily provides for expanded prisoner home confinement", "[t]he CARES Act places decision making authority solely within the discretion of the Attorney General and the Director of the Bureau of Prisons.") (citations omitted); United States v. Berry, 2020 WL 1984117, *3 (M.D.Pa. April 27, 2020) (same); United States v. Williams, 2020 WL 2748287, *1 (E.D.Tenn. May 27, 2020) ("The CARES Act gives decision-making authority to of the Attorney General and the Director of the [BOP]", and "Courts therefore do not have power to grant relief under Section 12003 of the CARES Act.") (citations omitted).

## III.    CONCLUSION

Based on the foregoing, Murphy's Motion for Compassionate Release and request for home confinement related to the COVID-19 pandemic, **(Doc. 113)**, will be **DISMISSED WITHOUT PREJUDICE** for lack of jurisdiction due to his failure to exhaust his BOP administrative remedies under §3582(c)(1)(A)(i). Further, insofar as Murphy is challenging any decision by the BOP that he is not eligible for home confinement designation under the CARES Act, the court will **DISMISS** it since the authority to make this determination lies with the BOP Director and not the court. Insofar as Murphy requests the court to appoint him counsel to represent him with respect to his motion, the request will be **DENIED**.  An appropriate order will follow.

s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**Dated: August 5, 2020**
13-230-01

21